UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

STANLEY BECK,

                              Plaintiff,

    v.

MICHAEL MINEV, *et al.*,

                              Defendants.

Case No.: 2:23-cv-00362-MMD-EJY

ORDER

## I.    SUMMARY

*Pro se* Plaintiff Stanley Beck, who is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), brings this action under 42 U.S.C. § 1983 against Defendants on an Eighth Amendment deliberate indifference to serious medical needs claim for events that took place while he was at High Desert State Prison ("HDSP"). (ECF No. 1-3 ("Complaint"); ECF No. 3 ("Screening Order").) Before the Court is Defendants'[1] motion for summary judgment (ECF No. 74 ("Motion")).[2] As explained below, because there is a genuine issue of material fact as to the adequacy of medical attention provided to treat Plaintiff's chronic pain, the Court denies the Motion.

## II.   RELEVANT BACKGROUND[3]

The Court previously screened Beck's Complaint (ECF No. 1-3) and found that it stated a colorable Eighth Amendment deliberate indifference to serious medical needs claim under 42 U.S.C. § 1983 against select Defendants for the failure to provide

---

[1]Defendants seeking summary judgment are Dr. Wilson Bernales, Dr. Gregory Bryan, Jaymie Cabrera, Benedicto Guttierrez, Michael Minev, Christopher Nehls, Georges-Pele Taino, and Julie Williams.

[2]Plaintiff responded (ECF No. 94), and Defendants replied (ECF No. 100). Defendants filed a motion to file Exhibit A, which contains excerpts of Plaintiff's medical records, under seal. (ECF No. 75.) The Court grants the motion to file under seal. (*Id.*)

[3]The following facts are undisputed unless otherwise noted.

adequate medical care during Covid-19 lockdowns.[4] (ECF No. 3 ("Screening Order").) In particular, Defendants ignored Beck's multiple requests to refill his pain prescription medications over the span of three years. (*Id.* at 7.) The following facts are taken from the Court's Screening Order (ECF No. 3) and adapted from the Complaint.

In his Complaint, filed on March 7, 2023, Beck presents allegations involving inadequate pain medication and treatment for severe nerve pain in his thigh for approximately three years, while incarcerated at HDSP. (*Id.* at 3-4.) Beck alleges that, in July 2020, Defendant Dr. Bryan (NDOC Senior Physician) prescribed him a topical analgesic balm designed to relieve joint and muscle pain called Capzasin-HP with refills for one year, that the prescribed 90-day supply of each 1.5-ounce tube of Capzasin cream was insufficient when used four times a day as directed, and that the other Defendants (i.e., Minev, Guttierrez, Taino, or Cabrera) refused to refill his Capzasin before the 90 days or to remedy the situation in response to Beck's grievances.[5] (*Id.* at 3-5.) Beck further alleges that Dr. Bryan indicated he would reorder the medication at a subsequent appointment, but the refill was not provided. (*Id.* at 5.) As a result, Beck suffered severe and prolonged chronic pain for three years. (*Id.* at 8.)

In addition, Beck challenges the delayed grievance process. In particular, Beck claims that Defendant Nurses Nehls and Guttierrez and Dr. Minev (NDOC Medical Director) failed to timely respond to his medical grievances regarding the medication refills. (*Id.* at 5-6.) On December 1, 2020, Beck filed an informal-level grievance stating that he had not received a prescription refill for Capzasin, he never received a response to his medical request forms, and he requested tests to address his hip and lower back pain issues. (*Id.* at 5.) Beck asserts that Nurse Nehls personally reviewed and denied his

[4]Select Defendants include Williams, Guttierrez, Carillo, Taino, Cabrera, Nehls, Dr. Manalang, Dr. Bernales, Dr. Bryan, Minev, and John/Jane Does 1-2, when Plaintiff learns their identities. (ECF No. 3 at 9.) The Court dismissed without prejudice Plaintiff's claims against Defendants Sisolak, Daniels, and Johnson. (*Id.*) As noted, Defendants Carillo and Dr. Manalang are not among the Defendants who filed the Motion.

[5]In a prior order, the Court found that Beck may not have received these later refills even after the relevant 90-day period, according to the Complaint's allegations and Beck's grievances. (ECF No. 25 (citing ECF No. 1-3 at 23; ECF No. 1-1 at 24, 33) at 4.)

informal-level grievance on June 3, 2022—approximately 18 months after Beck submitted it. (*Id.*) Beck further asserts that Williams (NDOC Associate Warden) did not timely deliver Nehls' denial until July 14, 2022. (*Id.*)

On February 4, 2021, Beck filed a first-level grievance against Minev, Guttierrez, Carillo, Nehls, Taino, Cabrera, Dr. Bryan, and Williams for their failure to refill his Niacin, Laporamide, Ibuprofen, and Capzasin prescriptions. (*Id.* at 6.) Nurse Guttierrez (Director of Nursing at HDSP), through Williams, personally reviewed and responded to the first-level grievance on August 17, 2022; but, Beck did not receive his response until more than a year later on October 3, 2023. (*Id.*) The response denied the grievance and failed to address Beck's concerns. (*Id.*) Finally, on March 24, 2021, Beck appealed a first-level grievance to Dr. Minev. (*Id.*) Minev responded more than a year later on July 22, 2022 stating that, "There were no recent kite requests noted in the chart for refill of the Capzasin."[6] (*Id.*)

Defendants do not dispute that Beck experienced delays. (ECF No. 100 at 3-4.) However, they contend that such delays were caused by the global Covid-19 pandemic rather than by any "deliberate indifference" or "intentional interference" by prison officials. (*Id.*) In their Motion, Defendants further assert that any alleged delay is excused not only by the pandemic but also by the fact that Defendants provided Beck with Ibuprofen on a "continual" basis to treat his pain. (ECF No. 74 at 10-11; *see also* ECF No. 76-2 at 23, 31, 35, 40, 43, 46.)

**III.    DISCUSSION**

Defendants seek summary judgment in their favor on Beck's Eighth Amendment deliberate indifference to serious medical needs claim and argue that they are entitled to qualified immunity on the basis that the medical care provided was adequate and that any alleged delay was excused and not deliberative. (ECF No. 74 at 9-13.) Defendants also raise arguments as to personal participation and difference in medical opinion. (*Id.* at 13-

---

[6]Beck further alleges that he continued to submit medical request forms to Minev, Guttierrez, Taino, Cabrera, Dr. Bryan, and Dr. Bernales, but the requests went unanswered. (ECF No. 3 at 5.)

15.) In response, Beck counters that a genuine issue of material fact exists as to whether the medical care provided was adequate and whether Defendants acted with deliberate indifference. (ECF No. 94 at 12, 14.)

### A. Eighth Amendment—Deliberate Indifference to Medical Needs Claim

The Court first addresses the Eighth Amendment deliberate indifference to medical needs claim and finds that a genuine factual dispute as to the medical treatment provided precludes summary judgment. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) (holding that summary judgment requires the moving party to bear the burden of showing that there are no genuine issues of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (Once the moving party satisfies Rule 56's requirements, the burden then shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial.").

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted). Deprivations constituting an "unnecessary and wanton infliction of pain" or denying the "minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation and internal quotation marks omitted). In essence, prison officials have a duty to guarantee adequate food, clothing, shelter, and medical care. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The *Estelle* Court defined, in part, the contours of the government's constitutional obligations regarding prisoner medical care. That is, the government has an "obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 103 (holding that "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose").

4

Thus, a prison official violates the Eighth Amendment when they act with "deliberate indifference" to the serious medical needs of an inmate.[7] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). In the pain-prescription context, courts have held that the "failure to treat" a prisoner-plaintiff's chronic pain by failing to provide "continuous" and "effective" pain-relieving medication can amount to an Eighth Amendment violation. *See, e.g.*, *Lavender v. Lampert*, 242 F. Supp. 2d 821, 847-48 (D. Or. 2002) (denying motion for summary judgment on the basis of a "genuine issue of material fact as to the appropriateness of the medical attention plaintiff [] received for his chronic pain" after providers prescribed Motrin in lieu of stronger pain management medications).

If the evidence, reviewed in the light most favorable to Beck, could support a finding of deliberate indifference to serious medical needs, then Defendants are not entitled to summary judgment.[8] Here, Defendants contend that any alleged delay in providing Capzasin-HP, which they describe as a "mild pain reliever," does not "constitute a substantial objective intolerable risk of serious harm." (ECF No. 75 at 10-11 (citing *Farmer*, 511 U.S. at 828).) Defendants further argue that they provided Beck with Ibuprofen on a "continual" basis to treat his pain, suggesting the Court should infer Ibuprofen to be a viable substitute for Capzasin-HP. (*Id.*) However, the Court is unpersuaded by this argument, as the methods of delivery and mechanisms for targeting pain appear to differ, resulting in a genuine and material factual dispute. That is,

---

[7]A prison official is deliberately indifferent to serioius medical needs when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." *See Farmer*, 511 U.S. at 834-35; *see also Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

[8]In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

Capzasin-HP is a topical medication administered directly to the affected area, whereas Ibuprofen is an oral medication that provides generalized pain relief. A reasonable jury could thus find that a topical cream designed to be applied to a specific area to address localized or nerve-related pain is not, on its face, equivalent to an oral medication that functions as a general pain blocker. Thus, Defendants have not shown that the substitution undisputedly resolved Beck's medical needs.

Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Hallett v. Morgan*, 296 F.3d 732, 745-46 (9th Cir. 2002); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). Beck alleges that the delay in receiving Capzasin-HP resulted in the chronic and exacerbated nerve pain in his right thigh for approximately three years. (ECF No. 3 at 8.) Based on the evidence, there is at least a genuine issue of material fact as to whether the delay caused Beck further harm. Moreover, a reasonable jury could conclude this further injury to be "sufficiently serious" under the objective requirement of the deliberate indifference inquiry. *See Farmer*, 511 U.S. at 834-35; *see also Egberto v. Nev. Dep't of Corr.*, 678 Fed. App'x. 500, 503 (9th Cir. 2017) (identifying the "existence of chronic and substantial pain" as a serious medical need and finding genuine dispute of fact as to whether denial of adequate pain medication constituted deliberate indifference) (internal citations omitted); *see also Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) ("Serious medical needs can relate to physical, dental and mental health") (internal quotations and citations omitted). Given these facts and viewing the evidence in the light most favorable to Plaintiff, a rational jury could very well find that Defendants were deliberately indifferent to Beck's serious medical needs by denying and delaying administration of the Capzasin-HP pain medication, causing further injury to Beck.

### B.    Qualified Immunity

Next, the Court turns to Defendants' argument that they are entitled to qualified immunity for Beck's Eighth Amendment claim. (ECF No. 74 at 9-15.) Defendants contend

that Beck cannot establish an Eighth Amendment violation because, as discussed above, the alleged delay was not "sufficiently serious" to constitute cruel and unusual punishment. (*Id.* at 10-12.) Beck counters that Defendants are not shielded by qualified immunity because they violated clearly established Eighth Amendment law. (ECF No. 94 at 15-17.) The Court similarly concludes that a factual dispute renders summary judgment improper as to qualified immunity.

Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether qualified immunity applies, the Court must consider "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232). District courts have discretion to address these prongs in any order. *Pearson*, 555 U.S. at 236.

Defendants have failed to meet their burden on summary judgment.[9] *Cf. Carley v. Aranas*, 103 F.4th 653, 660 (9th Cir. 2024) (holding that the burden of proof requires showing that the right was so clearly established under the Eighth Amendment that the official knew or should have known they were violating the Constitution). Under the second prong of a qualified immunity analysis, the Court asks whether the constitutional right the official allegedly violated was "clearly established at the time of the violation." *See, e.g., Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would

---

[9]"In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

understand" their conduct to violate the right. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

As previously mentioned, it is clearly established that, under the Eighth Amendment, the government has an "obligation to provide medical care" for inmates and that a failure to meet that obligation can constitute a constitutional violation cognizable under § 1983. *See Estelle*, 429 U.S. at 103-05. Here, the extent to which Defendants provided adequate medical care to Beck is in factual dispute. As noted above, there is a genuine dispute of material fact as to whether substituting a topical pain medication for an oral one is appropriate, particularly where the Court is asked to draw an inference assuming equivalence of the two. *See, e.g.*, *Lavender*, 242 F. Supp. 2d at 847-48. Moreover, Defendants concede to their delays in responding to Beck's grievances, which they attribute to the Covid-19 pandemic. (ECF No. 100 at 3-4.) In other words, Defendants argue that the delayed treatment in this case was not a clearly established violation of Beck's constitutional rights because the pandemic imposed constraints on prison officials' ability to address Beck's pain. (ECF No. 74 at 11-12.) However, this circuit has found that, while invoking Covid-based limitations on care in the inmate context may be a defense at trial, it "does not warrant the grant of qualified immunity at [the summary judgement] stage of the proceedings." *Lewis v. Gutierrez*, No. 24-5500, 2025 WL 3459472, at *1 (9th Cir. 2025) (affirming district court's denial of qualified immunity to prison dental assistants). Accordingly, a reasonable jury could thus conclude that Defendants should have understood that denying and delaying access to the Capzasin-HP was a violation of clearly established Eighth Amendment law.

Under the first prong, the Court must consider whether the official violated a constitutional right. *See City of Sonora*, 769 F.3d at 1022. Here, the occurrence of a constitutional violation is similarly in factual dispute. That is, Defendants have failed to establish the absence of a genuine dispute of material fact as to whether they violated Beck's Eighth Amendment rights by denying and delaying access to the Capzasin-HP.

8

Viewing all evidence in the light most favorable to Beck, the Court, for these reasons, finds that Defendants are not entitled to qualified immunity.

### C.    Personal Participation

Next, the Court turns to Defendants' argument that the claims against all Defendants, except Dr. Bryan, should be dismissed for lack of personal participation in Beck's medical care. (ECF No. 74 at 13-14.) Defendants urge the Court to uphold summary judgment, in particular, because Dr. Bryan, as NDOC's Senior Physician, was the "only defendant who treated Beck directly" and because the others played no role in any alleged constitutional violation. (*Id.* at 14.) The Court disagrees.

To state a claim for relief against an individual under 42 U.S.C. § 1983, a plaintiff must allege that a defendant (1) acted under color of state law, and (2) deprived a plaintiff of a constitutional right. *See, e.g.*, *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1989); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). In addition, "[l]iability under §1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)). The general requirement for personal culpability in Section 1983 actions extends to claims against supervisors: "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor*, 880 F.2d at 1045. Moreover, "if an officer denies a constitutionally-required request, or denies an appeal from a denial of such a request, the officer's denial qualifies as direct personal participation." *Blake v. Thomas*, No. 23-15151, 2024 WL 5205741, at *1 (9th Cir. 2024); *see also Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (finding personal participation where prison officer "personally denied [plaintiff's] second-level grievance even though he was aware that an optometrist had recommended surgery and that [plaintiff's] lower-level grievances had been denied despite that recommendation").

Here, it is undisputed that Defendant Nurses Guttierrez and Nehls personally reviewed and denied Beck's grievances. (ECF No. 3 at 5-6.) Defendants argue that Guttierrez and Nehls were the only ones involved in responding to Beck's grievances. (ECF No. 74 at 14.) But, Beck's allegation that other Defendants, including Dr. Minev, and Nurses Taino and Cabrera, refused to refill his Capzasin and that these Defendants along with Dr. Bernales failed to answer his medical request forms brings this proposition into question. (ECF No. 3 at 5.) Moreover, although Defendants argue that there is insufficient evidence to demonstrate NDOC Associate Warden Williams' involvement (ECF No. 74 at 14), a reasonable juror could conclude otherwise based on Williams' alleged role in delivering responses to Beck's grievances. (ECF No. 3 at 5.) Viewing the evidence in the light most favorable to Beck, a reasonable jury could thus find that all Defendants seeking summary judgment had at least some level of personal participation in the alleged constitutional deprivation of Beck's serious medical needs.

### D.   Difference of Opinion About Medical Treatment

Lastly, the Court addresses Defendants' argument that a medical difference of opinion causes Beck's claims against Dr. Bryan to fail as a matter of law. (ECF No. 74 at 14-15.) In particular, Defendants argue that "Beck's only complaint against Bryan was that he did not prescribe enough Capzasin-HP medication." (*Id.* at 15.) The Court is likewise unpersuaded by this argument.

Generally, it is true that a difference of opinion between medical professionals—or between a physician and prisoner—concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). This holds true "only if the dueling opinions are medically acceptable under the circumstances." *See Edmo*, 935 F.3d at 786 (citing *Toguchi*, 391 F.3d at 1058). Here, however, Defendants appear to mischaracterize and generalize Beck's claim by focusing on the precise *quantity* of the medication prescribed (as opposed to the refill frequency). Notwithstanding, a reasonable jury could find there to be a factual dispute as to whether

Dr. Bryan's prescribed treatment rose to the level of deliberate indifference, rendering summary judgment inappropriate at this stage.

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion, as they do not affect the outcome of the Motion.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 74) is denied.

It is further ordered that Defendants' motion to file motion to file Exhibit A, containing Plaintiff's medical records, under seal (ECF No. 75) is granted.

It is further ordered that this case is referred to the Magistrate Judge to conduct a settlement conference. The deadline for filing of the proposed joint pretrial order is 30 days from the settlement conference, assuming settlement is not effectuated.

DATED THIS 5th Day of March 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE